J-A18018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARAD A. ANGOTTI | |
| Appellant | No. 966 WDA 2016 |

Appeal from the Judgment of Sentence May 23, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006569-2015

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:               **FILED JANUARY 30, 2018**

Jarad A. Angotti appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction for driving under the influence (DUI) of a controlled substance[1] and possession of drug paraphernalia.[2]  After review, we affirm.

The trial court summarized the facts of this case as follows:

> On or about March 21, 2015, Keenan Jamison witnessed [Angotti] driving a black Chevy Blazer traveling on Miller Road, make a left turn onto Waddell Avenue and pull into the parking lot of the Family Dollar.  [Jamison] observed [Angotti] park his vehicle and remain in the vehicle for a minute or two.  [Jamison] then observed [Angotti] exit from the driver's side door, take a few steps forward, fall down, get up and fall again before turning

---

[1]  75 Pa.C.S.A. §3802(d)(1).

[2]  35 P.S. § 780-113(a)(32).

and walking back towards his car. [Jamison] observed [Angotti] walk back to his car where he eventually went back to the driver's seat and slumped over the steering wheel. [Jamison], concerned for [Angotti's] welfare, called 911 to report [Angotti's] behavior. [Jamison] testified that he was able to keep a clear view of [Angotti] from the first moment he saw him driving the vehicle to the time when the police and paramedics arrived.

Police Officer[] Matthew McDaniel responded to the 911 call and arrived at the scene shortly thereafter. Officer McDaniel observed [Angotti] staggering and slurring his speech and, based upon his twenty [] years of experience and training, he believed [Angotti] to be under the influence of a controlled substance. [Angotti] admitted to Officer McDaniel that he used a bag of heroin. An orange-capped needle was recovered from [Angotti's] coat pocket. No other [] drug paraphernalia was found on [Angotti] or in his vehicle. . . . [Angotti's] blood tested positive for methamphetamine and opiates.

Trial Court Opinion, 11/30/16, at 3-4.

Angotti was charged with DUI (controlled substance), accidents involving damage to unattended vehicle or property and possession of drug paraphernalia. The trial court convicted Angotti of DUI (controlled substance) and possession of drug paraphernalia following a non-jury trial held on May 5, 2016. On May 23, 2016, the trial court sentenced Angotti to three to six days' confinement and six months' probation, with no further penalty for the drug paraphernalia count. The trial court denied Angotti's timely post-sentence motion for a new trial. On June 30, 2016, he filed a timely notice of appeal. On October 27, Angotti filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Angotti raises the following issue:

Was the evidence insufficient as a matter of law to convict [Angotti] of . . . driving under the influence of controlled

substance, as the Commonwealth failed to prove beyond a reasonable doubt that [Angotti's] blood contained any . . . controlled substance . . . at the time he drove, operated or was in actual physical control of the movement of a motor vehicle?

Brief of Appellant, at 6. Specifically, Angotti avers that he did not use any controlled substances until after he parked his vehicle and relinquished actual physical control of its movement.[3]

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

---

[3] Angotti died on January 25, 2017 during the pendency of his appeal; however, his death does not render his appeal moot. *See Commonwealth v. Bizzaro*, 535 A.2d 1130 (Pa. Super. 1987) (death of appellant does not moot appeal).

*Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074-75 (Pa. Super. 2013).

An individual is prohibited from driving, operating or controlling the movement of a motor vehicle with any quantity of certain illegal drugs (or metabolites thereof) in his bloodstream. 75 Pa.C.S. § 3802(d)(1)(i)-(iii). Illegal drugs, as defined in section 3802, include Schedule I controlled substances and Schedule II and Schedule III substances that have not been medically prescribed for that individual. *Id.* In a prosecution for DUI, the Commonwealth can establish that a defendant had actual physical control of a vehicle through wholly circumstantial evidence. *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008).

Here, Jamison observed Angotti drive his Chevrolet Blazer into the Family Dollar parking lot on the morning of March 21, 2015. Angotti backed into "the furthest spot away from the [Family Dollar]." N.T. Nonjury Trial, 5/5/16, at 7. After one or two minutes, Angotti exited the vehicle; he was wearing a "black [N]orth [F]ace jacket." *Id.* at 10. Angotti fell straight down approximately 20 yards from his vehicle while attempting to walk to the Family Dollar. After getting up, Angotti did not proceed to the Family Dollar, but rather returned to his vehicle; he did not make it back to his vehicle before falling a second time. Jamison believed "[Angotti] was having a seizure," and, fearful that he required immediate medical attention, he called 911. *Id.* While awaiting the arrival of emergency services, Jamison continued to watch Angotti, who was sitting in the driver's seat slumped over the steering wheel. Less than five minutes later, Officer McDaniel

arrived at the Family Dollar parking lot; Angotti left his vehicle and walked in the opposite direction. At no point prior to Officer McDaniel's arrival did Jamison observe Angotti remove his jacket. Officer McDaniel noticed Angotti was staggering and asked him to stop, after which he inquired as to Angotti's well-being. Angotti's response was slurred, and Officer McDaniel, a 20-year veteran of the police force, believed Angotti was under the influence of a controlled substance. Angotti admitted to Officer McDaniel that he used a bag of heroin, and Officer McDaniel recovered an orange-capped intravenous needle from Angotti's jacket pocket. Officer McDaniel also noticed a recent track mark on Angotti's arm. Angotti consented to a blood draw, the results of which established the presence of both methamphetamines and opiates in his bloodstream.[4] *See Commonwealth*

_____

[4] Although the trial court discusses the applicability of *Birchfield v. North Dakota*, 136 S.Ct. 2160 (June 23, 2016), Angotti does not raise or argue the issue in his appellate brief. In *Birchfield*, the United States Supreme Court concluded "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Birchfield*, 136 S.Ct. at 2185. Specifically, the Supreme Court held that states cannot impose criminal penalties upon individuals who refuse to submit to a warrantless blood test because such penalties violate an individual's Fourth Amendment (as incorporated into the Fourteenth Amendment) right to be free from unreasonable searches and seizures. Admittedly, the instant direct appeal was pending (notice of appeal filed on June 30, 2016) at the time the Supreme Court decided *Birchfield*. Despite the trial court's conclusion that this claim is waived, we note, "a challenge to the legality of sentence cannot be waived." *Commonwealth v. Dickson*, 918 A.2d 95, 99 (Pa. 2007). As such, this is a legality issue which we may *sua sponte* raise. *Commonwealth v. Foster*, 17 A.3d 332, 342 (Pa. 2011) (sentencing issues relating to court's statutory authority to impose sentence implicate legality of sentence).

*(Footnote Continued Next Page)*

***v. Griffith***, 32 A.3d 1231, 1240 (Pa. 2011) (evidence was sufficient to support DUI charge where experienced police officer closely observed defendant's behavior, demeanor, unsteadiness, defendant admitted taking controlled substance on day of her arrest, and two other controlled substances were detected in her blood).

Angotti contends that he did not use heroin and/or methamphetamines until after he parked his vehicle and before police arrived. However, Jamison did not observe Angotti remove his jacket to inject heroin and/or

*(Footnote Continued)* _____

This Court recently determined that no matter the substance suspected of affecting a particular DUI arrestee, the law requires that warrant authorization or individual consent not based on the pain of criminal consequences predicate a blood test. ***See Commonwealth v. Ennels***, 167 A.3d 716 (Pa. Super. 2017). However, where a driver validly consents to a blood test prior to receiving warning of enhanced criminal penalties for failure to do so, we do not implicate ***Birchfield***, as the warnings do not taint the driver's consent. ***See Commonwealth v. Haines***, 166 A.3d 449 (Pa. Super. 2017) (citing ***Birchfield***, 136 S.Ct. at 2185-86). Even so, we are not constrained to implicate ***Birchfield*** only where a defendant receives an enhanced penalty for refusing a blood draw. Rather, ***Birchfield*** is also implicated where a defendant consents to a blood draw subsequent to receiving DL-26 warnings; however, such cases do not necessarily raise legality of sentence questions that this Court may address *sua sponte*.

Here, Angotti voluntarily consented to a blood draw after admitting to using heroin. There is no indication in the record that Officer McDaniel informed Angotti that he would face enhanced criminal penalties for failing to do so or that Officer McDaniel administered a DL-26 form prior to Angotti giving consent. ***See Commonwealth v. Wolfe***, 106 A.3d 800, 802 (Pa. Super. 2014) (standard and scope of review over questions involving the legality of sentence is de novo and scope of review is plenary). Moreover, Angotti does *not* argue in his brief that his consent was involuntary. Therefore, we deem it inappropriate to *sua sponte* raise this issue and, instead, chose to address only the claim Angotti raised on appeal.

methamphetamines intravenously and Officer McDaniel did not discover any other drug paraphernalia consistent with intravenous drug use (e.g., spoon, lighter, cotton, etc.). *See Commonwealth v. Johnson*, 833 A.2d 260, 262 (Pa. Super. 2003) (facts and circumstances established by Commonwealth in criminal prosecution need not preclude every possibility of innocence; any doubts regarding defendant's guilt may be resolved by fact-finder unless evidence is so weak and inconclusive that as matter of law no probability of fact may be drawn from combined circumstances).

When we construe these facts and the inferences therefrom in the light most favorable to the Commonwealth as the prevailing party, we conclude that the evidence was sufficient to establish that Angotti was driving under the influence of a controlled substance while operating a motor vehicle. *Pettyjohn*, *supra*; *Williams*, *supra*.

Judgment of sentence affirmed.

Judge Bowes joins the Memorandum and files a Concurring Memorandum in which Judge Ott joins.

Judge Ott concurs in the result of the Memorandum.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/30/2018</u>